FILED
Dec 22, 2021
02:01 PM(CT)
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| Timothy Swartsell, | ) | Docket No. 2021-06-1129 |
| Employee, | ) | |
| v. | ) | |
| Nashville Tempered Glass Corp., | ) | State File No. 48962-2021 |
| Employer, | ) | |
| And | ) | |
| Bridgefield Cas. Ins. Co., | ) | Judge Kenneth M. Switzer |
| Carrier. | ) | |

---

# EXPEDITED HEARING ORDER DENYING REQUESTED RELIEF

---

Mr. Swartsell filed a request for expedited hearing seeking additional medical benefits for his shoulder with Dr. Jaron Sullivan. Nashville Tempered Glass contests the compensability of his claim and the designation of Dr. Sullivan as the authorized treating physician. After a December 16, 2021 hearing, the Court rejects Nashville Tempered Glass's compensability defense but agrees that Mr. Swartsell is not entitled to additional medical benefits with Dr. Sullivan.

## Claim History

Mr. Swartsell testified that, in late May 2021, he felt pain in his left shoulder while lifting a propane tank at work. Thinking the injury would heal on its own, he did not report it. A few days later, he attempted to lift a heavy piece of glass and felt immediate pain in the same shoulder on June 2, 2021.[1]

Mr. Swartsell reported the injury, and Nashville Tempered Glass offered a panel. He chose an occupational medicine clinic. Mr. Swartsell first saw a doctor at the clinic on June 21, who diagnosed a shoulder strain, placed restrictions, and referred him to physical therapy. On cross-examination, Mr. Swartsell agreed that he understood that his chosen physician was the exclusive provider responsible for treating his shoulder, and he conceded

---

[1] The petition for benefit determination lists an injury date of June 11, 2021.

1

that he disagreed with the initial diagnosis but demurred to the doctor's expertise.

Mr. Swartsell had physical therapy and returned to the clinic approximately weekly. He conceded on cross-examination that he did not believe that physical therapy was helping the shoulder. He further agreed that, after the therapy ended, he felt pain that he attributed to physical therapy, which furthered his belief that the treatment was incorrect.

His last visit at the occupational clinic was on July 9. The doctor ordered x-rays, recommended physical therapy exercises at home, and offered a cortisone shot, which Mr. Swartsell was unable to accept. The records state that the physician released Mr. Swartsell to full duty, "even though he still has some pain." The doctor wrote, "He says he may come back in the future if this pain persists." The notes state he was "Released from Care," but they are silent on whether Mr. Swartsell was at maximum medical improvement.

Encouraged by his release, on July 17, Mr. Swartsell attempted to resume a longtime hobby, golf. He testified that on the first hole and after the first swing, his pain returned. He stopped immediately.

Mr. Swartsell did not return to the authorized doctor, however, but went to his primary care physician on July 21. He explained on cross-examination that he understood that he was "on my own" once he got a full release and frankly conceded he was dissatisfied with how workers' compensation had treated his injury. He further agreed that he did not contact anyone affiliated with workers' compensation about his plan to see his primary care doctor.

At the visit, Mr. Swartsell told his doctor about lifting the propane tank and glass at work, and his past treatment. In addition, the notes say, "His symptoms returned with more shoulder use. He tried to play golf and noted severe pain when trying to follow through with his swing." The doctor ordered x-rays and an MRI, and he later referred him to orthopedist Dr. Jaron Sullivan.

Mr. Swartsell saw Dr. Sullivan in early August and gave a history of both lifting incidents at work and pain from an attempt to play golf. Dr. Sullivan reviewed the imaging and confirmed a rotator cuff tear and biceps tendinopathy. He recommended surgery, which was scheduled for August 13.

On redirect, Mr. Swartsell testified that before he underwent surgery, he had "several discussions" about his shoulder with Keiaonna Phillips, the human resources director. He said she, as well as the chief operating officer and director of operations, were aware that he planned to have surgery. Mr. Swartsell said he returned to the authorized clinic after discussing his condition with them but offered no documentary proof that he discussed his intention to continue with the unauthorized care or the proposed surgery.

2

Mr. Swartsell returned to the authorized doctor on August 11. He reported that he had seen his primary care doctor, who ordered an MRI, and provided a copy of the results. The authorized doctor diagnosed a left rotator cuff tear and referred him to an orthopedic specialist. Notes from this visit do not mention that surgery had been recommended or was already scheduled. Mr. Swartsell acknowledged that missing information but said, "I did share that with the doctor."

On August 17, Mr. Swartsell chose Dr. Paul Grutter from a panel offered as a result of the referral . He saw him once in late August. As history, Mr. Swartsell again described the work incidents and that he felt pain in the shoulder while playing golf. He explained that he saw his primary physician and was referred to Dr. Sullivan, who operated on his shoulder. Dr. Grutter concluded that the surgery was "appropriate," and, "At this point, he will best be served by following up with his surgeon, Dr. Sullivan for post operative care[.]"

Neither Dr. Sullivan nor Dr. Grutter gave the opinion that the surgery was causally related to *golf.* Rather, Dr. Sullivan responded to a causation letter from Mr. Swartsell's attorney where he checked "yes" to a question about whether the injury was "caused by his work by greater than fifty percent considering all causes." He also wrote "yes" in response to whether the surgery was reasonable and necessary, and whether it was appropriate to perform the surgery when he did.

Mr. Swartsell seeks an order that Nashville Tempered Glass provide additional medical benefits with Dr. Sullivan as his authorized treating physician on referral from Dr. Grutter.[2] Nashville Tempered Glass counters that the injury is no longer work-related due to an intervening cause, Mr. Swartsell's decision to golf. It also argues that it is not responsible for additional treatment with Dr. Sullivan because Mr. Swartsell did not inform it of his decision to treat outside of workers' compensation.

**Findings of Fact and Conclusions of Law**

At an expedited hearing, Mr. Swartsell must provide sufficient evidence to show he is likely to prevail at a hearing on the merits. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2021); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

To prove entitlement to additional treatment, Mr. Swartsell must show that his shoulder condition is an injury "arising primarily out of and in the course and scope of

---

[2] Per his brief, Mr. Swartsell also seeks an order that Nashville Tempered Glass pay for surgery and past treatment with Dr. Sullivan. However, he submitted no medical bills or other proof regarding these expenses. A trial court cannot order this type of payment without the requisite proof "that the medical expenses . . . were incurred as a result of [a] compensable work injury or that the expenses were reasonable and necessary." *Mollica v. EHHI Holdings, Inc.,* 2020 TN Wrk. Comp. App. Bd. LEXIS 22, at *7 (Apr. 21, 2020).

employment" that causes the need for medical treatment. It must be shown to a reasonable degree of medical certainty that the employment contributed more than fifty percent in causing the injury, considering all causes. *See* Tenn. Code Ann. § 50-6-102(14)(A)-(C).

In addition, "[A] subsequent injury, whether in the form of an aggravation of the original injury or a new and distinct injury, is compensable if it is the 'direct and natural result' of a compensable injury." *UPS v. Brown*, No. M2014-01332-SC-R3-WC, 2015 Tenn. LEXIS 628, at *7 (Tenn. Workers' Comp. Panel Aug. 11, 2015). However, "an employee's intervening conduct can break the chain of causation necessary to impose liability for a subsequent injury based on the direct and natural consequences concept." *Id.* at *10.

Nashville Tempered Glass argued that Mr. Swartsell's intervening conduct, golfing, broke the chain of causation. However, it offered no medical opinion supporting that contention. It correctly observed that case law offers examples where courts have applied this principle without reliance on medical proof. *See, e.g., Jones v. Huey*, 210 Tenn. 162, 169, 357 S.W.2d 47, 49-50 (Tenn. 1962) (negligent operation of a tractor after a work-related back injury was not compensable).

Mr. Swartsell countered that he candidly told his primary care physician, the authorized doctor, and Dr. Sullivan about the lifting incidents as well as his one-time attempt at a golf swing. Yet, none of their notes stated that golf broke the chain of causation. In fact, Dr. Sullivan gave the opinion that his shoulder condition was "caused by his work by greater than fifty percent considering all causes."

Medical evidence is generally required to prove a causal relationship, "[e]xcept in the most obvious, simple and routine cases." *Berdnik v. Fairfield Glade Com'ty Club*, 2017 TN Wrk. Comp. App. Bd. LEXIS 32, at *11 (May 18, 2017). The Court finds Mr. Swartsell's shoulder injury is not routine, and medical evidence is required to show the causal relationship. Moreover, as in *Berdnik,* the Court is presented with one causation opinion, which it cannot ignore. *Id.* at *10. Therefore, the Court holds Mr. Swartsell has shown he is likely to prevail at a hearing on the merits that his current shoulder condition is primarily related to work.

However, that conclusion does not necessarily mean that Nashville Tempered Glass must provide the requested medical benefits.

As a starting point, an employer is obligated to provide medical treatment free of charge made reasonably necessary by a work accident. Tenn. Code Ann. § 50-6-204(a)(1)(A). An employee "shall accept the medical benefits," provided that the employer has provided a group of three physicians from which the injured employee shall select one as the treating physician.

4

An employee may be liable, however, for medical expenses incurred without consulting the employer. *Buchanan v. Mission Ins. Co.*, 713 S.W.2d 654, 658 (Tenn. 1986). If, as in this case, the employee is dissatisfied with the services of a physician provided by the employer, he generally has three options: (1) move the court to appoint a neutral physician; (2) consult with his employer and make other arrangements; or (3) go to a physician of his own choice, without consulting with his employer, and thus be liable for these services. *Bain v. UTI Integrated Logistics LLC*, No. W2018-00840-SC-WCM-WC, 2019 Tenn. LEXIS 493, at *18 (Tenn. Workers' Comp. Panel Oct. 16, 2019). Further, an employee must "consult his employer before incurring the expenses called for by that statute if the employee expects the employer to pay for it." *Id.* at *19.

Here, the proof showed that on July 9, the authorized physician suggested an injection and additional imaging. Regardless, the physician released him from treatment.

Fewer than two weeks later, Mr. Swartsell saw his primary care doctor for shoulder pain and mentioned the work and golf incidents. He admitted he was dissatisfied with his authorized treatment and thought that once he was released, he was free to see whomever he wanted for his shoulder.

He was−but that does not mean that Nashville Tempered Glass is responsible for treatment by the physician he chose. Mr. Swartsell did not move the Court for a neutral physician or consult with Nashville Tempered Glass to make other arrangements.

The record instead shows he chose his own doctor without consulting Nashville Tempered Glass. The authorized doctor's notes on August 11 are curiously silent about the fact that Mr. Swartsell was scheduled for surgery just two days later. The only proof that he told Nashville Tempered Glass about his intention to have surgery is his somewhat vague testimony, on re-direct, that he told Ms. Phillips and two others about it. However, he gave no detail about those discussions, nor did he offer affidavits or other documentary proof that he conveyed this information. Mr. Swartsell bears the burden of proof. Given his admitted dissatisfaction with the authorized treatment, and minimal proof that he told his employer about his intentions to have surgery before he had it, much less give Nashville Tempered Glass an opportunity to make other arrangements, the Court is unable to find that he satisfied his burden on this particular point.

As for Mr. Swartsell's later choice of Dr. Grutter and his referral back to Dr. Sullivan, the Court sees that as a mere end run−and an unsuccessful one at that−around his obligation to consult his employer *before* electing to treat with Dr. Sullivan and to undergo surgery.

In sum, Mr. Swartsell has not satisfied his burden to show he is likely to succeed at a hearing on the merits regarding his requested relief. His requests that the Court order Nashville Tempered Glass to pay for past unauthorized medical treatment with Dr.

Sullivan, or to order additional medical benefits with him designated as the authorized treating physician, are denied at this time.

Finally, this case is set for a scheduling hearing on **February 14, 2022**, **at 10:00 a.m. Central Time**.  Please call (615) 532-9552 or (866) 943-0025.

**IT IS ORDERED.**

**ENTERED December 22, 2021.**

*Kenneth M. Switzer*
_____
**JUDGE KENNETH M. SWITZER**
**Court of Workers' Compensation Claims**

**Appendix**

Evidence:
1. Mr. Swartsell's Affidavit
2. Employee's Exhibits
3. Employer's Exhibits
4. Records, Dr. Trenner

Technical record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Employer's Pre-Hearing Brief (Attachments are marked as Exhibit 3)
5. Employee's Brief
6. Employee's Supplemental Brief

**CERTIFICATE OF SERVICE**

I certify that a copy of this Order was sent on December 22, 2021.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Stephan Karr, employee's attorney | | | x | steve@flexerlaw.com cindy@flexerlaw.com |
| Greg Fuller, Adam Brock-Dagnan, employer's attorneys | | | x | ghfuller@mijs.com acbrock-dagan@mijs.com |

_____
**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**



<u>Expedited Hearing Order Right to Appeal</u>:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____      ☐ Motion Order filed on _____

☐ Compensation Order filed on_____      ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

## Parties
**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 ____.

_____
*[Signature of appellant or attorney for appellant]*